James J. **ROMANOWSKI** and Ryan J. Romanowski, Appellants–Defendants/Counter–Plaintiffs/ Third–Party Plaintiffs, Third–Party Plaintiffs,

v.

**GIORDANO MANAGEMENT GROUP, LLC, Appellee–Plaintiff/Counter Defendant,**

James Giordano, Appellee–Third– Party Defendant.

No. 29A02–0803–CV–252.

Court of Appeals of Indiana.

Nov. 14, 2008.

Davina L. Curry, Sean M. Clapp, Sean M. Clapp, LLC, Fishers, IN, Attorneys for Appellants.

## OPINION

KIRSCH, Judge.

James J. Romanowski ("James") and Ryan J. Romanowski ("Ryan") (collectively "the Romanowskis") appeal from the trial court's order finding: (1) in favor of Giordano Management Group, LLC ("GMG") on its complaint against the Romanowskis; (2) in favor of GMG on the Romanowskis' counterclaim; and (3) in favor of James Giordano ("Giordano") on the Romanowskis' third-party claim. The Romanowskis raise the following issue for our review: whether the trial court's judgment is clearly erroneous.

We affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

GMG entered into a lease agreement with the Romanowskis for real property located at 546 Pleasant Street, Noblesville, Indiana (the "Premises"). The term of the lease was for one year, beginning December 1, 2006, and expiring November 30, 2007. James, Ryan's father, who lived in Texas, had co-signed on the lease with

Ryan, who intended to live at the Premises.

On July 20, 2007, GMG became aware of a possible problem with Ryan's tenancy. Giordano, a principal of GMG, called the Noblesville Police Department and inspected the Premises. That day, Giordano contacted James, explained the condition of the Premises, and discussed the possibility of an early termination of the lease.

Giordano sent a letter to James confirming their telephone conversation about possible early termination of the lease. Giordano required a written response from the Romanowskis by July 25, 2007, in which they could request early termination of the lease; otherwise, Giordano would pursue eviction. Further, Giordano's letter detailed the information required to be included in the request, consisting of the date, signatures by both James and Ryan, forwarding addresses for both, and a clear statement of the move out date. Giordano's letter incorporated August 6, 2007, parenthetically, after the language regarding the move out date. Entry into the mutual release, or agreement about early termination, was contingent upon the performance by the Romanowskis of several conditions spelled out in Giordano's letter. The Romanowskis tendered a hand-written letter to Giordano and GMG, dated July 25, 2007, stating as follows:

> I(we) have decided to move forward with the termination of lease. I(we) understand that we need to meet the date of August 6th, 2007.
>
> Signed,
> /s/ James J. Romanowski
> /s/ Ryan Romanowski

*Def. Ex.* B, at 4.

James flew from Texas to Noblesville in order to perform the outlined conditions required for the early termination and to box up Ryan's personal property. James and a friend cleaned the inside of the Premises, cut the grass, trimmed some shrubs and trees, steam cleaned the carpets, and picked up debris and trash from around the Premises. James also paid the August rent.

On August 1, 2007, Ryan attempted to enter the Premises to remove the remainder of his personal property, but could not because the locks had been changed. James made several written and verbal requests thereafter of Giordano and GMG for the return of Ryan's personal property. On August 3, 2007, GMG filed a Small Claims Eviction Complaint against the Romanowskis in which GMG sought to evict Ryan from the Premises and to recover damages for breach of the lease. On August 14, 2007, Giordano and GMG had Ryan's personal property removed and placed in storage until it was returned to Ryan on October 13, 2007. When the property was returned, the Romanowskis found that it had been damaged. On August 23, 2007, the Romanowskis filed a counterclaim and third-party complaint alleging that GMG and Giordano had unlawfully locked the Romanowskis out of the Premises, and that Giordano and GMG unlawfully exerted unauthorized control over Ryan's personal property that had been located at the Premises. New tenants moved into the Premises on August 31, 2007.

A bench trial was held on February 13, 2008, at the conclusion of which the trial court took the matter under advisement. Thereafter, the trial court issued its judgment and order in favor of GMG on its complaint and awarded GMG $880.00 for storage of Ryan's property, but credited the Romanowskis for a $500.00 security deposit and $19.50 for one day's rent. The trial court also found in favor of GMG on the Romanowskis' counterclaim and in fa-

vor of Giordano on the third-party claim. The Romanowskis now appeal.

## DISCUSSION AND DECISION

Small claims actions are "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." Ind. Small Claims Rule 8(A). Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1067 (Ind.2006). This deferential standard does not apply to the substantive rules of law, which are reviewed *de novo. Lae v. Householder*, 789 N.E.2d 481, 483 (Ind.2003).

Moreover, when, as here, an appellee fails to submit a brief, we do not undertake the burden of developing arguments for them. *See Abouhalkah v. Sharps*, 795 N.E.2d 488, 490 (Ind.Ct.App.2003). We apply a less stringent standard of review with respect to showings of reversible error, and we may reverse the trial court's decision if the appellant can establish prima facie error. *Id.* "Prima facie error, in this context, is defined as 'at first sight, on first appearance, or on the face of it.'" *Id.* (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind.Ct.App.1985)).

### I. Ind.Code § 32–31–5–6 Violation

■ The Romanowskis argue that whether or not a valid agreement for early termination of the lease is found, GMG and Giordano were in violation of Ind.Code § 32–31–5–6(c) for changing the locks at the Premises without a court order. I.C. § 32–31–5–6(c), in relevant part, prohibits a landlord from denying or interfering with a tenant's access to a dwelling by changing the locks without first obtaining authorization by court order.

Here, Giordano testified on cross-examination that he did not obtain a court order prior to changing the locks at the Premises. Giordano further testified that because he considered the early termination request letter to be deficiently executed, the required conditions had not all been completed, and Ryan was no longer living at the Premises, Giordano considered the Premises abandoned.

Ind.Code § 32–31–5–6(a) provides that the section does not apply if the dwelling unit has been abandoned. Ind.Code § 32–31–5–6(b)(2) provides in part that a dwelling unit is considered abandoned if the circumstances are such that a reasonable person would conclude that the tenants have surrendered possession of the dwelling unit. The Romanowskis argue here on appeal that the evidence does not reflect that they abandoned Ryan's personal property. Ryan also testified that he was still living at the Premises.

Our review of the record leads us to the conclusion that the trial court erred. Under the original lease agreement, the lease was due to expire on November 30, 2007, and the rent under the original lease agreement was current. James, on Ryan's behalf, had already paid the August rent arguably securing a place to store Ryan's personal property for the month of August. Even if the Romanowskis' letter to Giordano was deficient, Giordano was aware that the Romanowskis were making efforts to comply with the conditions for early termination of the lease. Both Giordano and the Romanowskis referred to the August 6, 2007, date as the move out date. Accordingly, we find that a reasonable person would not conclude that the Romanow-

skis had surrendered possession of the dwelling unit prior to being locked out.

The record in this case supports one of the several scenarios: (1) the original lease stood as executed with a termination date of November 30, 2007 and was breached when Giordano locked out the Romanowskis; (2) an agreement for early termination of the lease with a move out date of August 6, 2007 was breached when Giordano locked the Romanowskis out sometime prior to August 1, 2007; or (3) Giordano and GMG had to proceed with eviction of the Romanowskis, in which case Giordano locked out the Romanowskis days before filing his eviction action. Under each of the scenarios Giordano, as a principal of GMG, wrongfully evicted the Romanowskis by refusing them access to the Premises and the personal property contained therein. Consequently, the trial court's judgment is clearly erroneous. Therefore, we reverse the trial court's award of $880.00 to GMG for storage of Ryan's property.

This court previously has held that although a defendant may not have possession of the disputed property, damages for wrongful detention or loss of use may still be recovered in a replevin action, if the taking or the detention of the property is shown to be wrongful. *See Lou Leventhal Auto Co. v. Munns,* 164 Ind.App. 368, 328 N.E.2d 734, 741 (1975). Furthermore, once a wrongful detention is established, at least nominal damages may be awarded. *Id.* at 742. While evidence was presented at trial about the amount of the actual damage to Ryan's property, we remand this matter to the small claims court for a determination of the amount of Ryan's damages for the loss of use of his property occasioned by GMG denying the Romanowskis access to the Premises.

## II. Counterclaim

■ The Romanowskis argue that the trial court erred by ruling in favor of GMG on their counterclaim. The Romanowskis counterclaimed, arguing that GMG had violated Ind.Code § 32–31–5–5 by taking possession of Ryan's personal property.

■ Where, as here, the party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *See Fowler v. Perry,* 830 N.E.2d 97, 102 (Ind.Ct.App. 2005). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

Ind.Code § 32–31–5–5 provides that a landlord may not take possession of, remove from a tenant's dwelling unit, deny a tenant access to, or dispose of a tenant's personal property *in order to enforce an obligation of the tenant to the landlord under a rental agreement.* Here, it was established that GMG denied the Romanowskis access to Ryan's personal property, removed it from the Premises, and placed it in storage. The personal property was returned to the Romanowskis on October 13, 2007.

However, Giordano, as principal of GMG, testified that he removed the personal property in order to show the Premises to prospective tenants. Giordano's testimony on cross-examination also reveals that he believed that he had the Romanowskis' consent, through counsel, to remove the personal property in order to allow Giordano to mitigate his damages by showing the Premises to prospective tenants who ultimately moved in on August 31, 2007. Therefore, the evidence establishes that GMG did not deny the Romanowskis access to the personal property in order to enforce an obligation of the tenant to the landlord under a rental agreement.

The trial court did not err in finding in favor of GMG on the Romanowskis' counterclaim.

### III. Third–Party Claim

 The Romanowskis argue that the trial court erred by ruling in favor of Giordano on their third-party claim, which alleged that Giordano was liable for civil conversion for exerting unauthorized control over Ryan's personal property. Again, the Romanowskis appeal from a negative judgment.

A civil action under the criminal conversion statute is permitted by Ind. Code § 34–24–3–1, which states that "[i]f a person suffers a pecuniary loss as a result of a violation of IC 35–43 … the person may bring a civil action against the person who caused the loss for [damages.]" *McLemore v. McLemore*, 827 N.E.2d 1135, 1143 (Ind.Ct.App.2005); Ind.Code § 34–24–3–1. In order to establish a viable claim, a plaintiff must show a violation of one of the specific code sections and that such violation caused the loss suffered by the plaintiff. *McLemore*, 827 N.E.2d at 1143.

Ind.Code § 35–43–4–3 states that a person who knowingly or intentionally exerts unauthorized control over property of another commits criminal conversion, a Class A misdemeanor. Ind.Code § 34–24–3–1 allows a victim of pecuniary loss as a result of a violation of the criminal conversion statute to bring a civil action to recover up to three times the amount of the actual damages, in addition to costs of the action and attorney fees. Unlike in a criminal trial, a claimant need prove by only a preponderance of the evidence that the defendant committed the criminal act; a criminal conviction of conversion is not a condition precedent to recovery in the civil action. *See JET Credit Union v. Louder-*

*milk,* 879 N.E.2d 594, 597 (Ind.Ct.App. 2008).

In the present case, Giordano's action in locking the Romanowskis out of the Premises and denying them access to his personal property was without legal basis. The Romanowskis presented evidence to the trial court regarding the amount of actual damage to Ryan's property that was returned to him. Consequently, we find that the trial court erred by finding in favor of Giordano on the Romanowskis' third-party claim. We remand this matter to the trial court for a determination of the amount of damages, which could include up to three times the amount of actual damages, costs of the action, and attorney fees.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and CRONE, J., concur.